Betty BAKER, Respondent,

v.

Charles F. KIRBY, Jr., Appellant.

No. 51031.

Supreme Court of Missouri,

Division No. 2.

Nov. 8, 1965.

Motion to Transfer to Court En Banc or for Rehearing Denied Dec. 13, 1965.

Bollow, Crist & Bollow, Shelbina, for respondent.

Carstarphen, Harvey & Wasinger, Hannibal, for appellant.

**BARRETT, Commissioner.**

Betty Baker claimed $25,000 damages for personal injuries sustained in a collision of motor vehicles. By a ten-to-two vote a jury returned a verdict in favor of the defendant, Charles F. Kirby, Jr. The trial court sustained plaintiff's motion for a new trial "for the reason that the Court erred in giving Instruction No. 6, because there was no substantia*ted* evidence to support the submission of same" and the defendant has appealed. As appellant the defendant contends that his motions for judgment should have been sustained because the plaintiff was guilty of contributory negligence as a matter of law and in any event that Instruction 6 was not erroneous because it was supported, he says "proved by the evidence of plaintiff and defendant."

The collision of automobiles occurred at 11:40 a. m., on August 28, 1961 on a curve, said to be about 250 feet in distance, on a graveled county road near Kendall in Shelby County. On the outside of the curve there was a ridge or windrow of gravel 16 to 18 inches high and about 12 inches wide, Betty's husband said that, most unusual, the road had been graded that morning. The parties and witnesses all lived in the neighborhood and were most familiar with the road and the curve. The plaintiff, Betty Baker, was driving a 1958 Edsel automobile. She was on her way to the home of her brother-in-law traveling west around the curve at a speed of 15, 20 or 25 miles an hour. The defendant, Charles F. Kirby, Jr., was driving a 1958 Chevrolet automobile, traveling south and east around the curve at a speed of 15 to 20 miles an hour on his way from home to the store at Kendall. There was an undergrowth of brush on his side of the curved road that "prevented me from seeing her" until he was but "four or five car lengths away from her" (and he defined a car length as "approximately" eighteen feet). Both parties claimed and testified that the other one drove his or her automobile over the center of the road. Kirby said that as he was "rounding the curve east of Shelby Schweiter's house there was a car coming on my side of the road and we collided." Betty said that she was driving her Edsel on "my side on the north side of the road" and was in the process of rounding the curve when she saw Kirby's car coming over the hill, "it appeared to be on his side of the road" and "I wasn't alarmed." Consequently she did not turn either to the right or the left. "Q. When were you apprised of the fact that there might be a collision? A. I heard gravel and I saw his car sliding toward me. Q. Alright. And did it slide across the centerline? A. Yes, sir. Q. And how far would you say across? A. Well, I don't know. Maybe a foot and a half or two feet, something like that." Betty said that it was too late to "take any evading action" after she heard the gravel and after he crossed the centerline and that the collision, a sideswiping "behind the back door" occurred after she was "three-quarters of the way around the curve or so because I hadn't straightened up completely." The sheriff of Shelby County had notes relating to statements of both drivers. As to Betty "She looked up and seen car coming and didn't believe it would hit except

for car number 1 (Kirby) applying brakes." As to Kirby, he testified, "The statement of the driver of car number 1 which was the Kirby car 'Driver states both cars in the middle of the road.'"

Thus plainly the really controverted and essential issue was which of the parties operated his or her motor vehicle over the unmarked center line of the graveled and freshly graded roadway. The plaintiff, Betty Baker, submitted this theory of her case and the defendant Kirby's liability by Instruction 2 in this language: "And if you further find from the evidence that the Defendant, Charles S. Kirby, Jr., failed to drive on the right or south and west one-half of said highway, but instead drove onto the other, or north and east, one-half of said highway at a time when said Edsel automobile was approaching in the said north and east one-half of said highway so closely as to constitute an immediate hazard of collision and came into collision with said Chevrolet." The appellant met the challenge and issue presented by that instruction with his Instruction 5, the substance of which is "yet if you further find and believe from the evidence, that the plaintiff Betty Baker was also negligent in the operation of her motor vehicle northwardly and westwardly in the north bound lane of the highway and at the curve described in the evidence, in that said Betty Baker negligently and carelessly failed to have her motor vehicle under proper control to keep the same to the right side of the highway under the conditions shown in the evidence, that is, to keep her motor vehicle in the north bound lane of the highway, if so, and thus brought about a collision with the Kirby automobile on said curve." Thus whether by way of a converse instruction or as a contributory negligence instruction the plain issue of negligence or contributory negligence in operating a motor vehicle over the center line or wrong traffic lane of the highway was submitted to the jury. Cluck v. Snodgrass, Mo.App., 381 S.W.2d 544.

■ This is not to say that either of the parties may not have been negligent or contributorily negligent in some other or further respect, but recurring again to the noted circumstances it is evident that the plaintiff Betty Baker was not guilty of contributory negligence as a matter of law as urged by the appellant in "(a) not looking up as she drove, (b) following the plain and visible gravel row too closely to her left, (c) following in the three tracks that cut the blinded corner and (d) waiting until she heard gravel to look up." As indicated, it may have been a jury question as to some of these matters but there was no contributory negligence as a matter of law. The circumstances of this case are totally unlike those cited and relied on by the appellant, multiple vehicular collisions at street intersections, wagons and pedestrians at railroad crossings or climbing over a train blocking a crossing. Adkins v. Boss, Mo., 290 S.W.2d 139; Fletcher v. Atlantic & Pacific R. Co., 64 Mo. 484; Sissel v. St. L. S. F. R. Co., 214 Mo. 515, 113 S.W. 1104; Hudson v. Wabash Western R. Co., 101 Mo. 13, 14 S.W. 15. The case does not involve any problem with which this appeal is concerned but the case similar on its facts is Byrd v. McGinnis, Mo., 299 S.W. 2d 455.

■ In addition to these issues the court gave Instruction 6 which the appellant urges is a correct and supported instruction on Betty's contributory negligence in another respect "in that said Betty Baker negligently and carelessly failed to keep a careful and vigilant lookout in the operation of her motor vehicle on the highway." The appellant points to two pieces of evidence, his statement that Betty was four or five car lengths away (80 feet at most) when he saw her and her testimony that she was "apprised" of the possibility of a collision when "I heard gravel and I saw this car sliding toward me" and contends that this testimony supports the instruction. He urges that while "looking is usually not susceptible of ready affirmative proof but

in a proper case it may be inferred from the attending surroundings and circumstances" (See v. Kelly, Mo.App., 363 S.W.2d 213, 216) and that the noted circumstances meet this test. Factually, the difficulty with the contention is that the plaintiff Betty testified that she was looking and saw Kirby all the time—even as he came over the hill—but that she was not alarmed and there was no danger until she heard gravel and "saw his automobile sliding toward me," a foot and a half or two feet over the center line of the highway, too late for her to do anything by way of avoiding a collision. And plainly from his own account of his inability to see Betty's automobile until the vehicles were but 75 to 80 feet apart traveling at speeds of 20 to 25 miles an hour, there is no circumstance from which it is either a fair, reasonable or permissible inference, as he hypothesized in Instruction 6 that she "negligently and carelessly failed to keep a careful and vigilant lookout." Thus again the case and circumstances are unlike those relied on by the appellant, rear-end collisions, attempting to pass left turning vehicles and intersectional collisions. Goldman v. Ridenour, Mo., 383 S.W.2d 539; Highfill v. Brown, Mo., 340 S.W.2d 656; Dean v. Jackson, Mo.App., 370 S.W.2d 716; Myers v. Searcy, Mo., 356 S.W.2d 59. On the contrary the case is governed by and falls within Zalle v. Underwood, Mo., 372 S.W.2d 98, 102: "It was reversible error to give Instruction No. 3 for the reason that there is not substantial evidence in this record to support a reasonable finding that the party charged with contributory negligence 'had the means and ability to have so acted that a collision would have been avoided.' * * * It was not shown that Mr. Underwood saw, or could have seen, the gap or the Zalle automobile at any given time after which, by the application of the brakes, he could have taken effective precautionary action. It was not shown that he did not see the Zalle automobile at the earliest possible moment." The Zalle case follows O'Neill v. Claypool, Mo., 341 S.W.2d 129, 135, "The only evidence on that question (failure to maintain a lookout) is that she looked both ways, saw nothing, entered the intersection, and then saw the Pontiac after she had turned into the intersection" and it was then too late "to take effective precautionary action." A case more nearly in point on its facts is Chandler v. Mueller, Mo., 377 S.W.2d 288, in which the defendant appellant "had no direct proof of Chandler's failure to maintain a lookout" and in which it was held after setting forth the relevant testimony that it was "not a fair, reasonable or permissible inference from this testimony that plaintiff Chandler at any time, certainly not after approaching the parked automobile and the point of collision, failed to keep or maintain a proper lookout and as of course it was prejudicial error to give an instruction submitting that hypothesis as a ground of contributory negligence thus defeating the plaintiff's right of recovery."

For the reasons indicated the judgment is affirmed and the cause remanded.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All of the Judges concur.